UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  5/16/2025
```

D.F., *individually and as parent and natural guardian of* 
A.F.,

                 Plaintiff,

           -v-

NEW YORK CITY DEPARTMENT OF EDUCATION,
THE BOARD OF EDUCATION OF THE CITY
SCHOOL DISTRICT OF THE CITY OF NEW YORK,
DAVID C. BANKS *in his official capacity as Chancellor*
*of the New York City Department of Education*, and CITY
OF NEW YORK,

                 Defendants.

------------------------------------------------------------------X

24-cv-3087 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

      D.F. ("Plaintiff") brings this action on behalf of herself and her child, A.F., alleging that the New York City Department of Education ("DOE"), the Board of Education of the City School District of the City of New York ("BOE"), David Banks in his official capacity as Chancellor of the New York City Department of Education ("Banks"), and the City of New York ("City") (collectively, "Defendants") violated D.F.'s and A.F's rights under the Individuals with Disabilities Education Improvement Act, ("IDEA"), 20 U.S.C. § 1400 *et seq*., 42 U.S.C. § 1983 ("Section 1983"), and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794. Dkt. No. 16. Defendants move to partially dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6). Dkt. No. 21.

      For the reasons that follow, Defendants' motion is granted in part and denied in part.

# BACKGROUND

## I.    Statutory and Regulatory Background

The IDEA guarantees that students with disabilities are provided a "free appropriate public education" ("FAPE").  20 U.S.C. § 1400(d)(1)(A).  The IDEA is designed to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs" and to "ensure that the rights of children with disabilities and parents of such children are protected."  *Id.* §1400(d).  "The IDEA offers federal funds to states that develop plans to assure all children with disabilities residing in each such state a free appropriate public education."  *See M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 223 (2d Cir. 2012) (citations and alterations omitted).  The centerpiece of the IDEA's educational system is the requirement that school districts implement an individualized education program ("IEP") each year for each child with a disability.  *Id.*  An IEP is a "written statement that 'sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives.'"  *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 507–08 (2d Cir. 2006) (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988), *opinion amended on denial of reh'g*, 480 F.3d 138 (2d Cir. 2007)).  "The IEP is to be developed jointly by a school official qualified in special education, the child's teacher, the parents or guardian, and, where appropriate, the child."  *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 368 (1985).

If a New York parent believes an IEP is insufficient under the IDEA or that the child is not being provided a FAPE, the parent "may unilaterally enroll the child in a private school and seek tuition reimbursement from the school district by filing what is known as a due process complaint."  *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 239 (2d Cir. 2015) (citation omitted).  Under the

*Burlington/Carter* test, a parent is entitled to reimbursement if "(1) the school district's proposed placement violated the IDEA, (2) the parents' alternative private placement was appropriate, and (3) equitable considerations favor reimbursement." *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014) (citing *M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 135 (2d Cir. 2013)); *see Florence Cnty. Sch. Dist. Four v. Carter ex. rel. Carter*, 510 U.S. 7, 12–16 (1993); *Burlington*, 471 U.S. at 373–74.

The parent's challenge to the IEP triggers an impartial due process hearing conducted before an Impartial Hearing Officer ("IHO") appointed by the local board of education. *See M.H.*, 685 F.3d at 224–25. The IHO's decision may be appealed by either party to a State Review Officer ("SRO"), an officer of the New York State Department of Education. *See id.* at 225. A "'party aggrieved' by the findings of the SRO 'shall have the right to bring a civil action' in either state or federal court." *Id.* (quoting 20 U.S.C. § 1415(i)(2)(A)).

The IDEA has a pendency provision that "seeks to maintain the educational status quo while the parties' dispute is being resolved." *T.M.*, 752 F.3d at 152; *see* 20 U.S.C. § 1415(j). The school district is required to "continue to finance [the] educational placement made by the agency and consented to by the parent before the parent requested a due process hearing." *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982).

## II.    Factual Background

As of the filing of the complaint, A.F. was an eleven-year-old boy who has been diagnosed with autism. Dkt. No. 16 ¶¶ 5, 40.

When A.F. was an infant, New York State's Early Intervention ("EI") program[1] deemed him eligible for EI services and provided services including speech and language therapy ("SLT"),

---

[1] New York's Early Intervention Program offers a variety of therapeutic and support services to eligible infants and toddlers up to the age of three who have disabilities as well as to their families.

feeding therapy, occupational therapy ("OT"), physical therapy ("PT"), and 15 hours a week of applied behavioral analysis ("ABA"), with the ABA to be administered in a setting of one provider per student (known as "1:1"). *Id.* ¶ 42; *see Thomason v. Porter*, 2023 WL 1966207, at *2 (S.D.N.Y. Feb. 13, 2023). A.F. responded well to the EI services and started to sing and use some words. Dkt. No. 16 ¶ 43.

In 2016, A.F. aged out of EI, the DOE informed D.F. that, for purposes of crafting the IEP that would govern A.F.'s education for the 2016–2017 school year, the DOE does not offer 1:1 instruction or ABA therapy. *Id.* ¶¶ 44, 46. Instead, the DOE recommended for the 2016–2017 school year that A.F. be placed in a special class with a ratio of eight students to one teacher and two paraprofessionals ("8:1:2") with SLT, OT, and PT services in addition to school bus transportation. *Id.* ¶ 45; *see Thomason*, 2023 WL 1966207, at *2. A.F. began regressing, lost the ability to use any words, and stopped eating certain foods he had previously learned to tolerate. Dkt. No 16 ¶¶ 48–49. In August 2017, the Committee on Preschool Special Education ("CPSE")[2] changed A.F.'s IEP to a 6:1:2 classroom with SLT, OT, and PT services. *Id.* ¶ 50. The change did not help A.F. regain his lost progress. *Id.* ¶ 51.

In January 2018, the CPSE issued its final IEP recommending a 6:1:2 class with SLT, OT, and PT services as well as transportation, but not ABA therapy. *Id.* ¶ 52.

In the spring of 2018, D.F. obtained a speech and feeding evaluation for A.F. which recommended at least three sessions of PROMPT[3]/speech/feeding therapy per week. *Id.* ¶ 53. At

---

*See* N.Y. Pub. Health Law §§ 2540 *et seq.*

[2] The CPSE "makes decisions regarding DOE services for children with special needs between three and five years old." *Richardson v. N.Y.C. Bd. of Educ.*, 711 F. App'x 11, 12 (2d Cir. 2017) (summary order).

[3] "'PROMPT' is an acronym for 'Prompts for Restructuring Oral Muscular Phonetic Targets' and 'is defined as a tactile-based therapy technique used for reshaping individual and connected sounds and sound sequences.'" *T.C. v. N.Y.C. Dep't of Educ.*, 2016 WL 4449791, at *10 n.14 (S.D.N.Y.

the time, A.F. was only approximating speech rather than speaking words, ate limited foods, and would choke and drool when he ate due to overstuffing his mouth such that he needed to be constantly monitored while eating. *Id.* ¶ 57. Defendants do not offer PROMPT or feeding therapy at the preschool or school-aged systems. *Id.* ¶¶ 54–55. In the spring of 2018, D.F. also obtained a neuropsychological evaluation for A.F., which recommended he receive ABA therapy in school and at home. *Id.* ¶¶ 58–59. The evaluation also recommended that A.F. receive a functional behavioral assessment. *Id.* ¶ 60.

The DOE convenes a Turning Five IEP meeting for each student prior to the school year in which the student is supposed to transition into kindergarten. *Id.* ¶ 61. A.F.'s Turning Five IEP meeting was held on May 11, 2018. *Id.* ¶¶ 61, 68. The DOE did not evaluate A.F.'s potential need for ABA because as a matter of policy, it does not conduct such evaluations and does not employ individuals with the skills to conduct such evaluations. *Id.* ¶ 63. D.F. requested an assistive technology ("AT") device, but she was told the request would not be granted because A.F. would drop it. *Id.* ¶ 65. The DOE did not conduct an AT evaluation, and under the DOE's policies and practices, an IEP team cannot consider an AT during an IEP meeting unless an AT evaluation was conducted. *Id.* ¶ 66. D.F. provided a copy of the speech and feeding evaluation and the neuropsychological evaluation to the DOE prior to A.F.'s Turning Five IEP meeting, but the DOE did not consider the recommendations. *Id.* ¶¶ 57, 70. Prior to the Turning Five IEP meeting, D.F. also provided a letter from A.F.'s doctor indicating that A.F. needed a paraprofessional. *Id.* ¶ 69. The DOE recommended a 12:1:1 special class with a part-time 1:1 paraprofessional for health and feeding and a door-to-door transportation and walking aid. *Id.* ¶ 71. At the Turning Five IEP

_____

Aug. 24, 2016) (quoting *E.C. v. Bd. of Educ. of City Sch. Dist. of New Rochelle*, 2013 WL 1091321, at *2 n.3 (S.D.N.Y. Mar. 15, 2013)).

meeting, the DOE representative again told D.F. that the DOE does not offer ABA therapy. *Id.* ¶ 72.

An advocate representing D.F. filed a due process complaint challenging A.F.'s IEP for the 2017–2018 school year. *Id.* ¶¶ 76–77. On August 31, 2018, the IHO concluded that A.F.'s IEP was inappropriate and that A.F. "has been receiving a relatively low level of services in pre-school for a student with such severe deficits." *Id.* ¶ 79; Dkt. No. 16-1 at 6. The IHO specifically noted that A.F. had only been recommended to receive SLT three times a week and that he was not provided with ABA therapy. Dkt. No. 16-1 at 6. The IHO ordered that A.F.'s 2017 IEP be "amended to provide for ABA in school, for ABA at home, and for speech language therapy five times per week for 60 minutes." *Id.* at 7. The IHO also ordered compensatory ABA and SLT services, a functional behavioral assessment, and OT evaluation. *Id.* at 6–7. The order stated that A.F. should have received an additional 161 hours of SLT and required the DOE to provide a bank of those compensatory services from which A.F. could draw going forward. *Id.*

Instead of complying with the IHO's decision, the DOE left the Turning Five IEP in place and assigned A.F. to a class of twelve children where he received no 1:1 instruction. Dkt. No. 16 ¶ 85. In October 2018, A.F's speech supervisor informed D.F. that the DOE would not add ABA services in school or at home and would not add after-school speech therapy. *Id.* ¶¶ 86–87. The DOE also failed to conduct a functional behavioral assessment or OT evaluation in the fall of 2018. *Id.* ¶ 88. The DOE assigned someone to conduct a functional behavioral assessment in January 2019, but the person conducted only one two-hour classroom observation, spoke to A.F.'s teachers, and talked to D.F. for 15 minutes. *Id.* ¶ 89. The document the DOE later sent "did not conform to the state regulatory requirements or the clinical requirements" for a functional behavioral assessment. *Id.* ¶ 90.

On March 22, 2019, the DOE held an IEP meeting, and subsequently an IEP was issued that recommended 6:1:1 special class placement as well as OT, PT, SLT, parent counseling and training for one hour per month, a paraprofessional for health and feeding, and door-to-door transportation accommodations. *Id.* ¶¶ 91–92. In April 2019, the DOE sent D.F. a new IEP without holding an IEP meeting. *Id.* ¶ 93. The new IEP appeared to add in-school ABA therapy for 45 minutes per day, at-home ABA therapy for 7.5 hours a week, and SLT for 60 minutes five times a week. *Id.* However, the DOE did not provide those services during the 2019–2020 school year. *Id.* ¶ 94. On April 29, 2019, the DOE moved A.F. to a 6:1:1 program. *Id.* ¶ 95.

On July 1, 2019, D.F., through counsel, filed a due process complaint pursuant to the IDEA and Section 504 alleging that A.F. had been denied a FAPE for the 2018–2019 and 2019–2020 school years. *Id.* ¶ 96; Dkt. No. 16-2.

A.F. continued in the 6:1:1 class in the summer of 2019 through September of 2019. Dkt. No. 16 ¶ 99. During that time, he repeatedly returned home from school with unexplained bruises and scratches. *Id.* ¶ 100. When D.F. raised the issue with school staff and bus staff, each blamed the other and denied that A.F. had been injured within their zone of responsibility. *Id.* ¶ 101. D.F. requested that DOE assign a fulltime paraprofessional to keep A.F. safe. *Id.* ¶ 102. However, the DOE instead asked D.F. to request a new reevaluation and a reconvened IEP meeting. *Id.* ¶ 103. D.F. did so. *Id.* ¶ 104.

D.F. had difficulties accessing the compensatory services ordered by the IHO, which came to a head in September of 2019. From April to September of 2019, A.F. used 90 out of the 161 compensatory SLT hours. *Id.* ¶ 106. In September, the provider moved away. *Id.* The DOE issued a voucher called a Related Service Authorization for SLT. *Id.* ¶ 107. However, the DOE did not provide a list of available providers that would accept the voucher. *Id.* ¶¶ 108, 110. D.F.

tried to find a provider on her own but was unable to locate one. *Id.* ¶ 110. During the 2019–2020 school year, D.F. obtained outside feeding therapy for A.F. through her insurance because the DOE does not offer that service. *Id.* ¶ 111.

On May 27, 2020, D.F., through counsel, filed a second due process complaint regarding the 2019–2020 school year. *Id.* ¶ 113; Dkt. No. 16-3. That complaint was eventually consolidated with her first complaint. Dkt. No. 16 ¶ 113. The IHO issued a pendency order on January 20, 2020. *Id.* ¶ 114.

After the schools closed in March 2020 due to the outbreak of COVID-19, the DOE did not develop an alternative IEP for A.F., but instead began to provide a few sessions of remote instruction per week. *Id.* ¶ 116. During the summer of 2020, the DOE approved five additional weekly hours of at-home ABA therapy. *Id.* ¶ 117. Starting in the fall of 2020, the DOE provided 30 minutes of direct classroom instruction per day and some of A.F.'s related services. *Id.* A.F. was unable to keep his mask on due to his autism and had to remain home for the 2020–2021 school year. *Id.* ¶ 119.

In advance of the hearing on D.F.'s due process complaints, the DOE failed to turn over records that had been subpoenaed by the hearing officer. *Id.* ¶¶ 122, 140. At the conclusion of the hearing, the IHO ruled in favor of D.F. and A.F., finding that the DOE had denied A.F. a FAPE for the 2018–2019 and 2019–2020 school years. *Id.* ¶ 143; Dkt. No. 16-4. The order stated, among other things, that "[a]s it is clear that AF requires individualized instruction, a teacher or paraprofessional must be available to work individually with AF at all times during the school day." Dkt. No. 16-4 at 11. The IHO ordered that a total of 45 hours of 1:1 ABA services per week be made available to A.F. year-round. *Id.* at 9–10. The IHO ordered compensatory education for all services that should have been provided but were not. *Id.* Because it was not apparent how

much time had actually been provided, the IHO required that the DOE turn over the relevant attendance records to determine the hour-for-hour compensation. *Id.* at 10. The IHO also ordered the DOE to provide 24 hours of training in the use of A.F.'s AT communication device. *Id.* Defendants did not appeal the IHO's decision. Dkt. No. 16 ¶ 145.

On September 13, 2021, D.F. filed a due process complaint alleging that A.F. had been denied a FAPE for the 2020–2021 and 2021–2022 school years. *Id.* ¶ 151; Dkt. No. 16-5. She amended the due process complaint on September 15, 2021. Dkt. No. 16 ¶ 153; Dkt. No. 16-6. The DOE agreed that it was obligated to provide A.F. services during the pendency of the case, but it did not execute a pendency document until March of 2022. Dkt. No. 16 ¶¶ 154–157.

During the summer of 2022, A.F. was scheduled for five 30-minute SLT sessions a week, and not his full pendency mandate of five 60-minute sessions. *Id.* ¶ 163. This continued throughout the 2022–2023 school year. *Id.* ¶ 177. The DOE issued vouchers for some (but not all) of the remaining services under the pendency mandate, but D.F. still could not locate a provider who accepted the vouchers. *Id.* ¶¶ 164–165. D.F. had to find her own provider for A.F.'s extended school day ABA services for the 2022–2023 school year. *Id.* ¶ 191. However, D.F. later learned that many of the hours were billed to the bank of compensatory services, instead of to the regular services A.F. should have been receiving under the pendency agreement. *Id.*

In December 2022, the school terminated all of A.F.'s in-school SLT services. *Id.* ¶ 179. No one notified D.F. of that termination, and she did not learn until the spring of 2023 that A.F.'s SLT services had stopped. *Id.*

On February 10, 2023, the IHO ruled mostly in favor of D.F. and A.F., finding that the DOE had denied A.F. a FAPE for the 2020–2021 and 2021–2022 school years. *Id.* ¶ 181; Dkt. No. 16-7. The decision ordered independent education evaluations and compensatory education.

Dkt. No. 16-7 at 8–9.  However, the IHO denied D.F.'s other requests for placement in a 12-month non-public school program with ABA services, a 1:1 aide, and special transportation, stating "I have considered the Parent's other requests for relief in the Due Process Complaint and they have been denied for lack of evidence in the record." *Id.* at 8.  Defendants did not appeal the decision. Dkt. No. 16 ¶ 184.

The DOE again scheduled A.F. for only five 30-minute SLT sessions a week for the 2023–2024 school year.  *Id.* ¶ 188.

On April 22, 2023, D.F. filed another due process complaint alleging A.F. had been denied a FAPE for the 2022–2023 school year.  *Id.* ¶ 193; Dkt. No. 16-8.  The IHO assigned a pendency program to keep certain services in place while the case was pending.  Dkt. No. 16 ¶ 195.

On May 4, 2023, the DOE issued an already-expired services voucher for the incorrect amount.  *Id.* ¶ 187.  D.F. brought the issue to the DOE's attention, but the DOE never corrected the voucher or provided the services.  *Id.* ¶ 188.

On December 5, 2023, the IHO ruled in favor of D.F. and A.F., finding that the DOE had denied A.F. a FAPE for the 2022–2023 school year.  *Id.* ¶ 199; Dkt. No. 16-9.  The order noted that "[a]t the hearing the DOE utterly failed to defend their educational plan insofar as they did not appear and did not introduce any evidence whatsoever." Dkt. No. 16-9 at 5.  The IHO also credited the testimony of witnesses for D.F. who testified that A.F. was "entitled to services that were ordered by prior IHOs, which were never implemented."  *Id.* at 7.  The decision ordered independent education evaluations and compensatory education.  *Id.* at 6–10.  It stated that A.F. was owed 200 hours of SLT, 450 hours of ABA services, 45 hours of ABA supervision, and 40 hours of parental training as compensation for services A.F. was entitled to—including under previous pendency orders—but had not received.  *Id.* at 7–8.  The IHO tentatively denied D.F.'s

request for compensatory OT and PT, stating that A.F. had received some of those services and ordering the DOE to provide an accounting of services provided to date. *Id.* at 8. Defendants did not appeal the decision. Dkt. No. 16 ¶ 200.

On December 7, 2023, D.F. filed a due process complaint alleging that A.F. had been denied a FAPE for the 2023–2024 school year. *Id.* ¶ 202; Dkt. No. 16-10. The IHO issued a pendency order on March 24, 2024. Dkt. No. 16 ¶ 205. D.F. filed an amended due process complaint on July 3, 2024. Dkt. No. 16-11.

## PROCEDURAL HISTORY

The action was initiated by complaint filed on April 22, 2024. Dkt. No. 1. Plaintiff filed an amended complaint on July 23, 204. Dkt. No. 16. Although Plaintiff's original complaint asserted a claim pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.*, *see* Dkt. No. 1 ¶¶ 81–87, the claim does not appear in the amended complaint, *see* Dkt. No. 1. Instead, the amended complaint asserts three causes of action: (1) violation of the IDEA, (2) violation of Section 1983, and (3) violation of Section 504. *Id.* ¶¶ 274–300.

On the consent of the parties, on July 29, 2024, the Court stayed all discovery pending resolution of the then-anticipated motion to dismiss. Dkt. No. 20.

On August 6, 2024, Defendants moved to partially dismiss the amended complaint. Dkt. No. 21. Defendants filed a memorandum of law in support of the motion. Dkt. No. 22. Plaintiff filed a memorandum of law in opposition to the motion on October 23, 2024. Dkt. No. 27. Defendants filed a reply memorandum of law in further support of the motion on November 15, 2024. Dkt. No. 30.

**LEGAL STANDARD**

**I.      Rule 12(b)(1)**

A court properly dismisses a claim for lack of subject matter jurisdiction under Rule 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A motion to dismiss for lack of subject matter jurisdiction may 'raise a facial challenge based on the pleadings, or a factual challenge based on extrinsic evidence.'" *U.S. Airlines Pilots Ass'n ex rel. Cleary v. US Airways, Inc.*, 859 F. Supp. 2d 283, 296 (E.D.N.Y. 2012) (quoting *Guadagno v. Wallack Ader Levithan Assocs.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996)).

Where the defendant challenges the legal sufficiency of a complaint's allegations, the court must treat all factual allegations as true and draw reasonable inferences in favor of the complaining party. *See Robinson v. Gov't of Malay.*, 269 F.3d 133, 140 (2d Cir. 2001). However, where the jurisdictional challenge is fact-based, the defendant may "proffer[] evidence beyond the [p]leading," and the plaintiff "will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)). In the case of a fact-based jurisdictional challenge, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations, and the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Zim Am. Integrated Shipping Servs. Co., LLC v. Sportswear Grp., LLC*, 550 F. Supp. 3d 57, 62 (S.D.N.Y. 2021) (citation omitted).

## II.    Rule 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. A complaint therefore must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In sum, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

Generally, when adjudicating a 12(b)(6) motion, a court will "not look beyond 'facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken.'" *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)); *see Goe v. Zucker*, 43 F.4th 19, 29 (2d Cir. 2022); *Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 383 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021).

**DISCUSSION**

Defendants move to dismiss Plaintiff's second cause of action (violation of Section 1983) and third cause of action (violation of Section 504) for failure to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, failure to establish subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Dkt. No. 22.

The Court begins, as it must, with the question of its jurisdiction. *See Lance v. Coffman*, 549 U.S. 437, 439 (2007) ("Federal courts must determine that they have jurisdiction before proceeding to the merits.").

## I.    Exhaustion

"It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 112 (2d Cir. 2004). The exhaustion requirement serves to ensure that "disputes related to the education of disabled children are first analyzed by administrators with expertise in the area who can promptly resolve grievances." *Id.* (citing *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 487 (2d Cir. 2002)). Even "[i]f the administrative process is not successful at resolving the dispute, it will at least have produced a helpful record because administrators versed in the relevant issues were able to probe and illuminate those issues for the federal court." *Id.* at 112–13 (citing *Riley v. Ambach*, 668 F.2d 635, 640 (2d Cir. 1981)). A plaintiff's "[f]ailure to exhaust" her IDEA remedies "deprives a court of subject matter jurisdiction." *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 530 (2d Cir. 2020); *accord Simmons v. Murphy*, 2024 WL 2837625, at *3 (2d Cir. June 5, 2024) (summary order). "The exhaustion requirement also applies where plaintiffs seek relief under other federal statutes when relief is also available under the IDEA." *J.S.*, 386 F.3d. at 112 (citing 20 U.S.C. § 1415(*l*); *Hope v. Cortines*, 872 F. Supp. 14, 19 (E.D.N.Y. 1995), *aff'd*, 69 F.3d 687 (2d Cir. 1995)). The

Supreme Court has stated that courts must treat "remedies" as synonymous with "relief" for this purpose. *See Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142, 148 (2023). Thus, where a Plaintiff brings a claim that seeks a remedy unavailable under the IDEA's administrative process, such as compensatory damages, exhaustion is not required. *See id.*

Here, however, Plaintiff seeks only declaratory, injunctive, and equitable relief as well as attorney's fees and costs. Dkt. No. 16 at 39; *see also* Dkt. No. 27 at 22 ("Plaintiffs are not requesting monetary damages in the instant matter."). Plaintiff's Section 1983 and Section 504 claims are therefore presumptively subject to the exhaustion requirement unless another exception applies. *See Simmons*, 2024 WL 2837625, at *3 ("Section 1415(*l*) of the IDEA extends the exhaustion requirement to claims brought under other federal statutes, including the ADA and Section 504, when a plaintiff 'seek[s] relief that is also available under' the IDEA." (quoting 20 U.S.C. § 1415(*l*)); *accord Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 161 (2017); *see, e.g., J.S.*, 386 F.3d at 112; *Doe v. N.Y.C. Dep't of Educ.*, 2018 WL 10231672, at *8 (S.D.N.Y. Oct. 2, 2018).

The exhaustion requirement is "not an inflexible rule." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002) (quoting *Mrs. W. v. Tirozzi*, 832 F.2d 748, 755 (2d Cir. 1987)). "Rather, Congress specified that exhaustion is not necessary if (1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies." *Id.* (quoting *Mrs. W.*, 832 F.2d at 756); *see also Honig*, 484 U.S. at 327 ("[P]arents may bypass the administrative process where exhaustion would be futile or inadequate.").

Plaintiff raises several arguments as to why her claims are not barred by the exhaustion requirement.

First, Plaintiff *did* exhaust many of her claims.  She filed a series of due process complaints challenging Defendants' acts denying A.F. a FAPE for the 2017–2024 school years.  Dkt. No. 16 ¶¶ 76–77, 96, 151, 193, 202; Dkt. Nos. 16-2, 16-3 16-5, 16-6, 16-8, 16-10.  Plaintiff prevailed in the cases pertaining to the 2017–2023 school years.  Dkt. No. 16 ¶¶ 79–82, 143–144, 181–182, 199; Dkt. Nos. 16-1, 16-4, 16-7, 16-9.[4]  The DOE could have appealed, but did not appeal, any of those decisions.  Dkt. No. 16 ¶¶ 145, 184, 200.  Plaintiff's due process complaints not only included IDEA claims, but also expressly put Defendants on notice that the hearings would include claims under Section 504 and Section 1983.  Dkt. Nos. 16-2, 16-3 16-5, 16-6, 16-8; *see F.C. v. N.Y.C. Dep't of Educ.*, 2016 WL 8716232, at *11 (S.D.N.Y. Aug. 5, 2016) (plaintiff satisfied exhaustion requirement by raising IDEA and Section 504 claims in her due process complaint even if the IHO ultimately did not address the Section 504 claim).  Defendants do not contest Plaintiff's allegations or identify any claim Plaintiff now asserts that she could have, but did not, raise in the impartial due process hearings.  Plaintiff thus has properly exhausted the claims raised in the due process complaints for the 2017–2023 school years on which she prevailed.  *See French v. N.Y. State Dep't of Educ.*, 476 F. App'x 468, 470 (2d Cir. 2011) (summary order) (holding that plaintiff exhausted administrative remedies by filing due process complaint, obtaining a ruling from the IHO, and appealing where the ruling was in the DOE's favor); *T.K. v. N.Y.C. Dep't of Educ.*, 779 F. Supp. 2d 289, 311 (E.D.N.Y. 2011) (same).  However, to the extent that the IHOs denied Plaintiff's requests for relief, *see* Dkt. Nos. 16-7, 16-9, and she does not allege that she appealed, she has not exhausted her administrative remedies with respect to those claims.

---

[4] Plaintiff does not state whether the assigned IHO has ruled on her complaint concerning the 2023–2024 school year.

Second, the Second Circuit has held that "'an action alleging violation of the stay-put provision falls within one, if not more, of the enumerated exceptions to' the IDEA's exhaustion requirement." *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 455 (2d Cir. 2015) (quoting *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002)). As the Circuit explained, "[s]ince the purpose of the stay-put provision is to keep the child in an existing placement until all proceedings—administrative and judicial—have run their course, there is no evident reason why administrative proceedings should have to be recommenced to that end." *Id.* "Applying the exhaustion requirement to stay-put claims would create a loop of marathon proceedings, since each new round of administrative proceedings would itself be subject to a fresh round of judicial review." *Id.* (citing 20 U.S.C. § 1415(i)(2)). Plaintiff alleges several instances in which Defendants violated an active pendency order or agreement. *See, e.g.*, Dkt. No. 16 ¶¶ 163 (alleging that during the summer of 2022, A.F. was scheduled for five 30 minute SLT sessions a week instead of the 60 minute sessions he was owed under the pendency mandate), 164 (alleging that A.F. was issued vouchers for some, but not all, of the services he was owed under the pendency mandate), 191 (alleging that the DOE charged A.F.'s ABA services to the bank of compensatory hours instead of the pendency mandate).[5] Plaintiff therefore need not satisfy the exhaustion requirement with respect to those claims.

Third, Plaintiff argues that she asserts systemic, policy-based allegations that are exempt from the exhaustion requirement. The Second Circuit has concluded that where a plaintiff alleges systemic violations, "it would be futile to complete the administrative review process because the hearing officer had no power to correct the violation." *J.S.*, 386 F.3d at 113–15 (collecting cases);

---

[5] Plaintiff also advances several conclusory allegations that the DOE did not implement A.F.'s pendency mandate. *See, e.g.*, *id.* ¶¶ 115, 146, 185, 201, 221, 230. These have no bearing on the issue of exhaustion.

*see also M.G. v. N.Y.C. Dep't of Educ.*, 15 F. Supp. 3d 296, 305 (S.D.N.Y. 2014) ("Although IHOs and SROs have the authority to order wide-ranging relief for individual children in a specific school year, they have no power to alter the City's policies or general practices and cannot issue prospective relief.").  For example, a court in this District held that exhaustion was not required where a plaintiff challenged the DOE's allegedly systematic practices of "requiring students to miss core instruction to receive support services, preventing IEP teams from recommending 1:1 instruction and after-school tutoring, and decertifying students without prior reevaluation." *F.C.*, 2016 WL 8716232, at *7–10.  Cases asserting such claims need not be brought as a class action but must allege more than individual grievances unique to the student at issue. *See id.* at *7–8.  "It is not enough just to say that defendants have policies, practices, and procedures that violate the IDEA when the complaint gives 'no factual basis whatsoever from which the Court might infer that [plaintiffs'] experience is representative of an endemic problem' and instead merely 'reflect[s] a plaintiff-specific dispute over the quality or methodology of services, which is routinely and properly resolved through the administrative process.'" *M.H. v. N.Y.C. Dep't of Educ.*, 2025 WL 27534, at *1 (S.D.N.Y. Jan. 3, 2025) (quoting *L.A. v. N.Y.C. Dep't of Educ.*, 2021 WL 1254342, at *5 (S.D.N.Y. Apr. 5, 2021)); *see also, e.g.*, *Levine v. Greece Cent. Sch. Dist.*, 353 F. App'x 461, 465 (2d Cir. 2009) (summary order) ("Because, as the district court noted, it is clear from the complaint that Levine is challenging the Defendants' treatment of him individually, and does not make allegations other than in conclusory fashion that his situation resulted from systemic violations of the IDEA, we conclude that it would not have been futile for him to resort to administrative remedies." (citation omitted)); *F.C.*, 2016 WL 8716232, at *8 ("F.C. alleges policies that are unlawful across-the-board, not merely as applied to her son."); *L.A.*, 2021 WL 1254342, at *5 (holding that the plaintiff did not plead systemic violations obviating exhaustion

requirement where the plaintiff "point[ed] to no facts suggesting that DOE's actions or inactions affected anyone other than [her son]").

Plaintiff argues that the amended complaint alleges that the DOE applied the following violative policies and practices to D.F.: (1) refusing to provide 1:1 instruction, ABA, extended day, or home based services on A.F.'s IEPs that he required for a FAPE, even despite multiple requests made by D.F. and to include these services on all of A.F.'s IEPs; (2) predetermining A.F.'s IEPs by limiting the availability of the services the DOE can offer; (3) forcing D.F. to constantly engage in litigation to obtain and maintain A.F.'s required services; (4) failing to implement A.F.'s services granted under pendency in each of the cases at issue; and (5) failing to implement the decisions issued by all of the IHOs in the cases at issue.  Dkt. No. 27 at 11 (citing Dkt. No. 16 ¶¶ 40–207, 218–281, 285–300).

The amended complaint does not allege that the first, third, fourth, or fifth of these are systemic policies adopted across-the-board so much as IDEA violations specific to A.F. and D.F.  By their own terms, these purported violations are targeted at the individuals in this case rather than applied across a broad swath of students.  *See Doe v. N.Y.C. Dep't of Educ.*, 2018 WL 10231672, at *7 (S.D.N.Y. Oct. 2, 2018) (claim of systemic violations did not excuse lack of exhaustion where "the factual allegations relating to this claim speak only to a failure with respect to plaintiff *alone*, and not a systemic one" (quotation omitted)).  To the extent the amended complaint attempts to cast these individual-focused violations in broader terms, it does so in a conclusory manner, *see, e.g.*, Dkt. No. 16 ¶ 222 (alleging that "[d]efendants systematically fail to implement orders of hearing officers"), or by noting the existence of class action lawsuits with similar allegations, *see, e.g.*, *id.* ¶ 223 (alleging that "[s]ince 2003, DOE, the Board and the Chancellor have been the subject of a class action lawsuit, *L. V. v. New York City Department of*

*Education*, l:03-cv-09917-LAP-KNF, for failing to timely implement interim and final orders of impartial hearing officers."). Such allegations fail to show that "Plaintiff's experience represented an endemic problem within the District." *Avaras v. Clarkstown Cent. Sch. Dist.*, 2019 WL 4600870, at *15 (S.D.N.Y. Sept. 21, 2019) (quotation omitted); *see M.H.*, 2025 WL 27534, at *1 (holding that the plaintiffs failed to plead systemic violation where the plaintiffs "cite defendants' involvement in a 2003 class action lawsuit in this District over timely implementation of interim and final orders, but give no specific facts arising out of the case to support their allegation that there was a systemic policy or practice of refusing to implement orders during the relevant time period").

The only one of the purportedly generalized policies that Plaintiff properly identifies as a systemic practice is Defendants' alleged policy of limiting the menu of services the DOE can offer when creating a student's IEP. Plaintiff alleges that "IEP teams are not allowed to offer 1:1 instruction, ABA, after-school services, home-based special education or related services unless those services are ordered in a hearing, appeal or court action." Dkt. No. 16 ¶ 249. She further alleges that on several occasions when crafting A.F.'s IEPs, DOE personnel told her that the DOE does not offer ABA or 1:1 instruction. *Id.* ¶¶ 44, 46, 72, 87. Those allegations, "which must be accepted as true on the present motion, support[] the allegation of the existence of a policy or practice." *F.C.*, 2016 WL 8716232, at *9 (holding that the plaintiff adequately alleged the existence of a policy when she alleged that "during the 2012 IEP meeting, defendants' staff told F.C. that they do not offer 1:1 instruction or after-school tutoring through an IEP" (punctuation omitted)); *see M.G.*, 15 F. Supp. 3d at 304 (holding that the exhaustion requirement was excused where the plaintiffs alleged that "the City refuses to include certain services on any IEP regardless of the student's needs, and parents can only obtain such services through due process hearings").

Plaintiff, does not, however, allege any factual allegation supporting the inference that the DOE has a policy of not offering after-school services, home-based special education or related services absent litigation.

Ultimately, the exhaustion requirement is satisfied or excused by Plaintiff's allegations concerning (1) the claims raised in the due process complaints for the 2017–2023 school years on which she prevailed; (2) the DOE's failures to implement A.F.'s pendency mandates; and (3) the DOE's policy of not offering ABA services and 1:1 instruction in students' IEPs suffice, and subject matter jurisdiction is therefore appropriate for those claims. Plaintiff must otherwise exhaust administrative remedies before turning to the Court.

## II.    Section 504

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To establish a *prima facie* case of discrimination under Section 504, a plaintiff must allege that: "(1) plaintiff is a qualified individual with a disability; (2) plaintiff was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by [the] public entity; and (3) such exclusion or discrimination was due to [plaintiff's] disability." *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016) (quotation omitted).

Though often brought together, claims under the Rehabilitation Act and IDEA are not coextensive. "The Rehabilitation Act provides relief from discrimination, whereas IDEA provides relief from inappropriate educational placement decisions, regardless of discrimination." *BD v. DeBuono*, 130 F. Supp. 2d 401, 438 (S.D.N.Y. 2000). "Thus the scope of protection afforded under the two statutes is different." *Id.* A plaintiff alleging a Section 504 violation therefore must

show something more than a mere violation of the IDEA. *See Cianciotto on behalf of D.S. v. N.Y.C. Dep't of Educ.*, 2022 WL 1204788, at *17 (S.D.N.Y. Apr. 22, 2022) ("[B]ecause the Rehabilitation Act addresses discrimination against disabled students, rather than failures to provide special education services, a claim [based on] a denial of a FAPE brought under [Section 504] requires something more than a mere violation of the IDEA." (quotations omitted) (alterations in original)).  That "something more" is a showing that the defendant acted with bad faith or gross misjudgment, or deliberate indifference. *See C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 835 (2d Cir. 2014); *K.O. v. N.Y.C. Dep't of Educ.*, 2022 WL 1689760, at *6 (S.D.N.Y. May 26, 2022).  "Put otherwise, discrimination sufficient to support a Section 504 claim may be inferred when there is evidence that a school district acted with deliberate or reckless indifference to the student's federally protected rights or with bad faith or gross misjudgment." *Cianciotto*, 600 F. Supp. 3d at 459 (quotation omitted).  "However, plaintiffs need not show defendants acted with animosity or ill will to support a claim under . . . Section 504." *Scaggs v. N.Y. Dep't of Educ.*, 2007 WL 1456221, at *15 (E.D.N.Y. May 16, 2007) (collecting cases).

Courts in this Circuit have held that the defendants' "persistent failure" to provide a student with a FAPE and to respond to requests for reasonable accommodations "are sufficient to raise a plausible inference that Defendants acted with bad faith or gross misjudgment." *K.S. v. City of New York*, 2023 WL 6608739, at *17 & n.10 (S.D.N.Y. Oct. 10, 2023); *see also C.Q. v. N.Y.C. Dep't of Educ.*, 2024 WL 4979293, at *8 (S.D.N.Y. Dec. 3, 2024) ("Prolonged deprivation of a FAPE may constitute evidence of deliberate indifference to violation of federal rights.").  The key issue is not merely the length of time for which the deprivation of a FAPE persists, but the defendant's awareness of the ongoing deprivation and the extent of the failure to remedy.  *See K.S.*, 2023 WL 6608739, at *17 ("Courts have found that this showing is sufficiently alleged when,

for example, the plaintiff alleges that the defendant repeatedly violated the IDEA and then failed to remedy those violations *when alerted to them*." (emphasis added)) (collecting cases).

A series of IHOs determined that A.F. had been denied a FAPE for at least the 2017–2023 school years. During that time, D.F. repeatedly brought issues to Defendants' attention, including by filing numerous due process complaints, specifically requesting the services A.F. needed but had been denied, and voicing complaints regarding A.F.'s mistreatment. *See, e.g.*, Dkt. No. 16 ¶¶ 65, 69, 76–77, 96, 101–102, 151,180, 188, 193, 202; Dkt. Nos. 16-2, 16-3 16-5, 16-6, 16-8, 16-10. The amended complaint is rife with instances in which the DOE stymied, rather than aided, D.F.'s attempts to secure A.F. needed services, such as by repeatedly failing to comply with the pendency mandates and the IHOs' orders, revoking A.F.'s SLT without alerting D.F., and continuously underproviding the services A.F. needed and which Defendants had agreed to—or had been ordered to—provide. Such continued failure to properly implement A.F.'s IEP even when presented with clear instructions by IHOs demonstrates, at best, the DOE's deliberate indifference to A.F.'s educational rights as a person who was disabled. *See K.S.*, 2023 WL 6608739, at *17 ("[R]epeated failures to provide D.S. a FAPE in violation of the IDEA and failure to respond to reasonable accommodations are sufficient to raise a plausible inference that Defendants acted with bad faith or gross misjudgment."); *F.C.*, 2016 WL 8716232, at *16 (sustaining Section 504 claim where defendants failed to provide the student a FAPE "over a series of years" including failing to implement the student's IEP by withholding specified services).

Plaintiff's allegations of the DOE's continuing course of action stonewalling or stymying D.F.'s efforts to procure a FAPE for A.F. are sufficient to raise the plausible inference that Defendants acted with bad faith or gross misjudgment.[6]

---

[6] Defendants argue that Plaintiff's Section 504 claim should be dismissed because she does not

III.    **Section 1983**

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  The statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

42 U.S.C. § 1983.  To prevail on a Section 1983 claim, plaintiffs "must establish that they were deprived of a right secured by the Constitution or laws of the United States without due process of law, and that the alleged deprivation was committed under color of state law." *BD*, 130 F. Supp. 2d at 431; *accord Beckman v. Niemynski*, 2021 WL 101093, at *2 (E.D.N.Y. Jan. 11, 2021) ("A procedural due process violation occurs when the government deprives a person of a protected life, liberty, or property interest without first providing notice and an opportunity to be heard.").

"Importantly, the denial of a 'free appropriate public education,' has been held a constitutional deprivation which is actionable under Section 1983." *M.H. ex rel. K.H. v. Mount Vernon City Sch. Dist.*, 2014 WL 901578, at *8 (S.D.N.Y. Mar. 3, 2014) (citing *Quackenbush v. Johnson City Sch. Dist.*, 716 F.2d 141, 148 (2d Cir. 1983)); *see M.M. v. N.Y.C. Dep't of Educ.*, 2017 WL 1194685, at *14 (S.D.N.Y. Mar. 30, 2017) (noting that although "[t]he Fourteenth Amendment does not protect a public education as a substantive fundamental right, . . . the IDEA creates rights in favor of disabled children and their families enforceable through [S]ection 1983" (quotations and alterations omitted); *S.W. by J.W. v. Warren*, 528 F. Supp. 2d 282, 297 (S.D.N.Y.

---

adequately plead systemic claims.  *See* Dkt. No. 22 at 5–6; Dkt. No. 30 at 4.  But she is not required to plead systemic claims.  *See M.H.*, 2025 WL 27534 at *1–2 (granting motion to dismiss systemic IDEA claims but denying motion to dismiss Section 504 claims).

2007) ("Plaintiffs have a protected property right to an IEP."); *BD*, 130 F. Supp. 2d at 431 (The "plaintiffs had a protected property right to an individualized treatment plan which would meet their needs."). Accordingly, courts in this Circuit have held that a Section 1983 claim may be predicated upon the plaintiff's deprivation of rights under the IDEA. *See, e.g.*, *R.B. ex rel. L.B. v. Bd. of Educ. of City of N.Y.*, 99 F. Supp. 2d 411, 418 (S.D.N.Y. 2000); *Conway v. Bd. of Educ. of Northport-E. Northport Sch. Dist.*, 2014 WL 3828383, at *16 (E.D.N.Y. Aug. 1, 2014).

"[A] governmental entity like DOE is subject to municipal liability under section 1983, so long as the plaintiff demonstrates the existence of a municipal policy that causes the plaintiff to be subjected to the deprivation of a federal right." *Vasquez*, 2024 WL 1332822, at *5 (quotations omitted) (citing *Monell v. Dep't of Social Servs. of the City of N.Y.*, 436 U.S. 658 (1978)). A plaintiff "must satisfy two requirements: (1) they must first prove the existence of a municipal policy or custom in order to show the municipality took some action that caused their injuries, and (2) the plaintiffs must establish a causal connection between the policy and the deprivation of their federal rights." *BD*, 130 F. Supp. 2d at 437. Courts in this District have recognized that:

> A plaintiff may allege the existence of a municipal policy in one of four ways: (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiffs' . . . rights; (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Vasquez*, 2024 WL 1332822, at *5; *accord J.L.*, 324 F. Supp. 3d at 469.

Defendants argue that "[w]here IDEA and Section 1983 claims are brought simultaneously, a plaintiff must prove that a constitutional violation occurred 'outside the scope of the IDEA.'" Dkt. No. 22 at 7–8 (quoting *A.K. v. Westhampton Beach Sch. Dist.*, 2019 WL 4736969, at *16 (E.D.N.Y. Sept. 27, 2019)). "In other words, a plaintiff cannot prevail on a § 1983

claim for violation of procedural due process under the Fourteenth Amendment if the violations for which she seeks redress are actionable under the IDEA." *Engwiller v. Pine Plains Cent. Sch. Dist.*, 110 F. Supp. 2d 236, 250–51 (S.D.N.Y. 2000).

However, Defendants acknowledge that "[a] plausible due process claim may arise" pursuant to Section 1983 "where a plaintiff 'alleges systematic violations that are not redressable by the administrative proceedings.'" Dkt. No. 30 at 5 (quoting *L.V. v. N.Y.C. Dep't of Educ.*, 2020 U.S. Dist. LEXIS 128723, at *41 (S.D.N.Y. July 17, 2020)); *see Mrs. W.*, 832 F.2d at 755–57 (affirming denial of a motion to dismiss the plaintiffs' Section 1983 claim where the plaintiffs alleged "a pattern and practice of systematic . . . violations unable to be addressed at the due process hearings provided [by the State]"); *F.C.*, 2016 WL 8716232, at *18 (denying motion to dismiss Section 1983 claims based on systemic violations of the IDEA); *Vasquez*, 2024 WL 1332822, at *8 (same).  As stated above, Plaintiff alleges factual allegations supporting the inference that the DOE had a systemic policy of refusing to offer 1:1 instruction or ABA therapy in students' IEPs absent litigation. *See supra*.[7]  Those allegations show the deprivation of a free appropriate public education that the IDEA's administrative procedures could not address.  They therefore suffice to support her Section 1983 claim.

The Court also "has the authority to issue an order to enforce the terms of [the IHOs' orders] awarding services pursuant to 42 U.S.C. § 1983."  *M.H. v. N.Y.C. Dep't of Educ.*, 2021 WL 4804031, at *31 (S.D.N.Y. Oct. 13, 2021), *aff'd sub nom. H.C. v. N.Y.C. Dep't of Educ.*, 71

---

[7] In addition to the other purported policies that the Court already stated were insufficiently pleaded, Plaintiff argues that the amended complaint contains allegations that "the DOE systemically fails to ensure that their employees or agents are adequately trained in accordance with the law (in light of their repeated violations)."  Dkt. No. 27 at 20 (citing Dkt. No. 16 ¶¶ 290–291).  However, Plaintiff's allegations concerning the DOE's alleged failure to supervise and train employees are wholly conclusory and thus do not support her Section 1983 claim.

F.4th 120 (2d Cir. 2023); *accord Rutherford v. Fla. Union Free Sch. Dist.*, 2019 WL 1437823, at *25 (S.D.N.Y. Mar. 29, 2019) ("With respect to Plaintiffs' allegations of non-compliance, this Court has subject matter jurisdiction under § 1983 to enforce favorable administrative decisions rendered under the provisions of the IDEA.").  To the extent Plaintiff asserts a claim pursuant to Section 1983 to enforce the IHO's orders, Defendants' motion to dismiss the claim is denied.

Defendants' motion to dismiss Plaintiff's Section 1983 claim is denied to the extent the claim is predicated upon enforcement of the IHO's orders or upon her allegations of the DOE's policy of not offering 1:1 instruction or ABA therapy in students' IEPs in the first instance, and is otherwise granted.

## CONCLUSION

Defendants' motion to dismiss the amended complaint is GRANTED IN PART and DENIED IN PART.

Defendants request bifurcated discovery such that discovery of Plaintiff's IDEA claims would precede discovery of Plaintiffs' Section 504 and Section 1983 claims.  Dkt. No. 22 at 9–10; Dkt. No. 30 at 6–7.  The Court will reserve on that request pending the parties' submission of a proposed case management plan and the holding of a status conference in accordance with the Court's July 29, 2024 Order.  Dkt. No. 20.

The Clerk of Court is respectfully directed to close Dkt. No. 21.

SO ORDERED.

Dated: May 16, 2025
    New York, New York
    _____
    LEWIS J. LIMAN
    United States District Judge